**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
EVERTON MONCRIEFFE,

                      Plaintiff,

          -against-

PIERCE COACH LINE, INC.,
JOHN DOE, CORPS. #1-5, and JOHN AND
JANE DOES #1-5,

                      Defendants.
---------------------------------------------------------------X

**MEMORANDUM AND ORDER**

CV 16-6604 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I. **PRELIMINARY STATEMENT**

      Plaintiff Everton Moncrieffe ("Plaintiff") commenced this action in November 2016 against his former employer, Pierce Coach Line, Inc., and individual employees of Pierce Coach Line, Inc. (collectively, "Defendants") asserting violations of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law "(NYCHRL"). *See generally* Plaintiff's Complaint ("Compl.") [DE 1]. Prior to the parties appearing before this Court for an Initial Conference on June 2, 2017, Defendants moved to dismiss the NYCHRL claims on the grounds that Plaintiff's Complaint established that the actions underlying his claims took place entirely in Long Island, rather than New York City, thereby rendering the NYCHRL effectively inapplicable. *See generally* DE 13. Plaintiff subsequently agreed to amend the Complaint to remove the NYCHRL claims and an Amended Complaint was filed on August 2, 2017. *See* Plaintiff's Amended Complaint ("Am. Compl.") [DE 26]. However, around this time there appears to have been a breakdown in the

attorney-client relationship between Plaintiff and Plaintiff's counsel, in part leading to the filing of several motions between July and December 2017. On July 24, 2017, Defendants moved the Court for an award of attorneys' fees and costs associated with the filing of their motion to dismiss. *See* Defendants' Motion for Fees ("Defs.' Mot.") [DE 22]; Defendants' Memorandum in Support of Their Motion for Fees ("Defs.' Mem.") [DE 23]. Plaintiff's counsel did not file any opposition to this motion. On August 23, 2017, Defendants moved the Court for an Order compelling Plaintiff to respond to Defendants' discovery demands, among other things. *See* DE 29. On November 20, 2017, Plaintiff's attorney, Samuel F. Denny, Esq., moved to withdraw as counsel. *See* DE 38. On December 7, 2017, Plaintiff himself requested, among other things, a stay of this action until he was able to retain new counsel. *See* DE 40.

Of the several motions before the Court, this Memorandum and Order addresses only Defendants' unopposed motion for attorneys' fees and costs in connection with the motion to dismiss the NYCHRL claims. *See* DE 22. For the reasons which follow, Defendants' motion is DENIED, for the reasons which follow.

## II.    RELEVANT BACKGROUND

Plaintiff commenced this action with the filing of the initial Complaint on November 29, 2016. *See* DE 1. On April 21, 2017, Defendants filed both a motion to dismiss the claims brought under the NYCHRL and an Answer as to the remaining claims. *See* DE 11, 13. This Court held an Initial Conference on June 2, 2017, at which time the Court discussed with Plaintiff's counsel the lack of connection with New York City sufficient to support a claim under the NYCHRL. Plaintiff's counsel[1] stated that the filing of the NYCHRL claims was "a

---

[1] The Court notes that the original November 25, 2016 Complaint reflects the names of both Richard Rosenthal, Esq. and Samuel Denny, Esq. as the attorneys representing Plaintiff Everton Moncrieffe. DE 1. These two attorneys have separate law practices. Attorney

2

mistake." Specifically, counsel explained that his understanding of the law – *i.e.*, that Plaintiff's residency in Queens alone was sufficient to support a NYCHRL claim – was legally incorrect. Accordingly, the Court instructed Plaintiff's counsel to file an amended complaint removing the NYCHRL claims. Defendants' counsel also stated that she had made a telephone call to counsel requesting that Plaintiff withdraw the NYCHRL claims voluntarily because of the absence of a connection to New York City. In addition, Defendants' counsel advised that she had made this request prior to filing a motion to dismiss and if the motion was necessary, she intended to seek the costs associated with making it. The Court heard briefly from both sides on the issue and granted Defendants leave to file their motion for attorneys' fees and costs.[2]

### III. DISCUSSION

Defendants ask the Court for an award of $4,765 in attorneys' fees for work performed by counsel in connection with the filing of the motion to dismiss the NYCHRL claims. *See generally* Defs.' Mem. Defendants' counsel argues that she (1) was forced to file the motion to dismiss despite having explained to Plaintiff's counsel in that telephone call that the NYCHRL was inapplicable since the alleged wrongful acts took place entirely on Long Island, and (2) requested that counsel voluntarily withdraw the NYCHRL claims accordingly. *See id*. at 3-4. After filing the motion to dismiss, Defendants' counsel point out that Plaintiff's counsel "acknowledged that the NYCHRL claims had no basis in law and were frivolous by failing to

---

Rosenthal filed a Notice of Appearance on May 31, 2017, two days before the Initial Conference. Both Mr. Rosenthal and Mr. Denny appeared at the June 2, 2017 Initial Conference.

[2] The Court notes that although the Court's Minute Order from the Initial Conference does not reflect the discussion between the Court and counsel regarding the removal of the NYCHRL claims and Defendants' motion for costs, *see* DE 17, the courtroom audio recording does contain the colloquy and reflects that this discussion took place within the first several minutes of the conference. The Court has reviewed the audio recording in reaching a decision on the instant motion.

oppose Defendants' Motion to Dismiss and admitting on the record during the June 2, 2017 Initial Conference that Plaintiff should have agreed to withdraw the NYCHRL claims instead of subjecting Defendants to unnecessary motion practice." *Id.* As to the legal basis for their motion, Defendants refer to New York law, stating that "as the prevailing party on the NYCHRL claims and because of Plaintiff's frivolous conduct in failing to withdraw the NYCHRL claims, Defendants request that they be awarded the attorneys' fees they incurred in filing the Motion to Dismiss pursuant to the NYCHRL or 22 NYCCRR [*sic*] § 130-1.1(a)." *Id*. at 6.

### A. The Appropriate Legal Framework

Initially, the Court must determine the appropriate legal framework under which the instant motion should be reviewed. That is to say, the Court must identify the proper legal authority, if any, authorizing the Court to grant the relief Defendants seek.

#### 1. *The Several Sources of Authority Available*

Although under the "American Rule," a prevailing party typically is not entitled to recover reasonable attorneys' fees from its opponent, *see Asesores y Consejeros Aconsec CIA, S.A. v. Glob. Emerging Markets N. Am., Inc.*, 881 F. Supp. 2d 554, 555 (S.D.N.Y. 2012) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45 (1991)), there exist several sources of authority on which a federal court may rely, given the circumstances of a case, to award attorneys' fees.

The first and most apparent of these sources are the many statutes, both state and federal, which authorize an award of fees and costs in certain circumstances. *See, e.g.*, 42 U.S.C. § 12205; 42 U.S.C. § 2000e–5(k); 15 U.S.C. § 77k(e); 15 U.S.C. § 77www(a); 15 U.S.C. §§ 78i(e), 78r(a); 42 U.S.C. § 1857h-2(d); 42 U.S.C. § 4911(d); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247-70 (1975) (examining the history of attorneys' fees in the federal courts). One such statute, 28 U.S.C. § 1927, provides as follows:

4

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  Similarly, several provisions of the Federal Rules of Civil Procedure authorize an award of attorneys' fees in certain circumstances.  These include Rule 11 (regarding representations in papers filed with the court, and discussed in detail, *infra*), and Rule 37 (regarding failure to comply with discovery demands).

State law can provide authority to issue fee awards as well:  federal courts exercising diversity jurisdiction -- although the instant case has an independent basis for federal jurisdiction -- look to the substantive law of the states in which they are located to determine whether an award of attorneys' fees is available.  *Lewis v. S. L. & E., Inc.*, 629 F.2d 764, 773 n. 21 (2d Cir. 1980) (citing *Alyeska Pipeline Serv. Co.*, 421 U.S. 259 n.31).  In New York, a federal court sitting in diversity

> may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct as defined in this Part. In addition to or in lieu of awarding costs, the court, in its discretion may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct as defined in this Part, which shall be payable as provided in section 130-1.3 of this Subpart.

N.Y. COMP. CODES R. & REGS. tit. 22, § 130-1.1(a).  *See Asesores y Consejeros Aconsec CIA, S.A.*, 881 F. Supp. 2d at 555.  The fee provision of the NYCHRL[3] states that "the court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs."  New York City, N.Y., Code § 8-502.  However, "although an award of fees is presumed

---

[3] The Court notes that the NYCHRL is not a state statute but a municipal law.

when the prevailing party is the plaintiff, *e.g., Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir.2001), fees should be awarded to prevailing defendants only when the plaintiff's claim was frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so." *Tate v. Levy Rest. Holdings, LLC*, 150 F. Supp. 3d 245, 249 (E.D.N.Y. 2015) (internal quotations omitted).

Finally, federal courts possess an inherent equity authority to "assess attorneys' fees for the willful disobedience of a court order . . . as part of the fine to be levied on the defendant[ ] . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. These exceptions [to the American Rule] are unquestionably assertions of inherent power in the courts to allow attorneys' fees in particular situations, unless forbidden by Congress." *Alyeska Pipeline Serv. Co.*, 421 U.S. 258-259 (internal quotations and citations omitted). "This power stems from the very nature of courts and their need to be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (quoting *Chambers*, 501 U.S. at 43).

### 2. *State or Federal Law?*

Defendants appear to argue that New York law – either in the form of the fee provision of the NYCHRL, or the general provision of 22 New York Codes, Rules and Regulations § 130-1.1(a) – provides the appropriate vehicle for an award of attorneys' fees in this case.[4] *See* Defs.' Mem. at 4-6. However, the Court questions the applicability of New York law here. This

---

[4] With regard to the standard set out in the New York Codes, Rules and Regulations, Defendants cite *Asesores y Consejeros Aconsec CIA, S.A. v. Glob. Emerging Markets N. Am., Inc.*, 881 F. Supp. 2d 554 (S.D.N.Y. 2012). *See* Defs.' Mem. at 4. In that case, the district court for the Southern District of New York, sitting in diversity, determined that an award of attorneys' fees under substantive New York law was appropriate.

6

litigation asserts claims under the ADA and invokes the Court's federal subject matter jurisdiction. As such, the Court finds that federal law is the applicable standard for determining the appropriateness of fees in these circumstances.

In 1992, the United States Supreme Court determined that to qualify as a "prevailing party" under the attorneys' fee provisions of federal civil rights statutes, "a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). The Court concluded that, "[i]n short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id*. at 111-12. The New York Court of Appeals subsequently determined that since the NYCHRL's attorneys' fee provision "is substantively and textually indistinguishable from its federal counterparts . . . the *Farrar* standard is applicable to attorney's fee claims under the New York City Human Rights Law." *McGrath v. Toys "R" Us, Inc.*, 3 N.Y.3d 421, 434 (2004); *see Degregorio v. Richmond Italian Pavillion, Inc.*, 90 A.D.3d 807, 808 (2011) (applying the *Farrar* standard); *Tate*, 150 F. Supp. 3d at 249 ("The standards for awarding attorneys' fees under the NYCHRL mirror those that govern such awards in federal civil rights cases.") (citing *McGrath*, 3 N.Y.3d at 429)).

To the extent there have been any changes in how New York courts interpret the fee provision of the NYCHRL since their formal adoption of the *Farrar* standard, New York courts have essentially re-emphasized the liberal construction courts owe the NYCHRL and have acknowledged that "all provisions of the NYCHRL must be construed 'broadly in favor of

7

discrimination plaintiffs, to the extent that such a construction is reasonably possible.'"[5] *Chauca v. Abraham*, 30 N.Y.3d 325, 333 (2017) (quoting *Albunio v. City of New York*, 16 N.Y. 3d 472, 477-78 (2011)).

Applying these principles to the instant motion, the Court concludes that Plaintiff eventually withdrew (albeit late in the process) his NYCHRL claims, thereby depriving the Court procedurally of the opportunity to address Defendants' motion to dismiss. Consequently, Defendants cannot be considered "prevailing" parties under the meaning of the *Farrar* standard and the New York courts which have adopted it. Equally important, even had the Court addressed Defendants' motion to dismiss, since the motion was based on the geographic inapplicability of the NYCHRL, there would not have been an opportunity for the Court to examine the allegations concerning the underlying asserted wrongful acts, and therefore the "merits" of the NYCHRL claims would have gone unaddressed. *See Semtek Intern. Inc. v. Lockhead Martin Corp.*, 531 U.S. 497 501-02 (2001) ("The original connotation of an 'on the merits' adjudication is one that actually 'pass[es] directly on the substance of [a particular] claim' before the court. That connotation remains common to every jurisdiction of which we are aware.") (quoting Restatement (Second) of Judgments § 19, Comment *a*, at 161). Therefore, even had Defendants obtained favorable relief from the Court on their motion, that relief would not constitute "favorable relief on the merits" of any part of the action. Moreover, as New York courts have made very clear, every provision of the NYCHRL, including the attorneys' fee provision, is to be construed "broadly in favor of discrimination plaintiffs" -- such a construction militates against a determination that although relief under NYCHRL is inapplicable to a

---

[5] The catalyst for this change was a 2005 City Council amendment to the Administrative Code (the "Restoration Act") requiring that the NYCHRL be liberally construed "regardless of whether federal or New York state civil and human rights laws . . . have been so construed." *Chauca*, 30 N.Y.3d at 332 (quoting Administrative Code § 8-130(a)).

8

discrimination plaintiff for geographic reasons, the fee provision of the NYCHRL is available to his adversary. Accordingly, the Court concludes that a fee award under the fee provision of the NYCHRL would not be appropriate in this case.

Rather, to the extent the Court may be able to adjudicate Defendants' motion, its authority to award attorneys' fees in this case derives from federal law, specifically either (1) Rule 11 of the Federal Rule of Civil Procedure, (2) 28 U.S.C. § 1927, or (3) the Court's inherent equity authority. With this analysis in mind, the Court turns to the motion itself.

### B.     The Circumstances Presented by the Instant Motion

#### 1.     *Rule 11*

##### a.     **Legal Principles**

Rule 11(b) of the Federal Rules of Civil Procedure states that an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies" that to the best of his knowledge, information, and belief formed after a reasonable inquiry, the filing is: (1) not presented for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) either supported by evidence or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b).

Sanctions under Rule 11 can be awarded following either a motion on notice, *see* FED. R. CIV. P. 11(c)(2), or upon a *sua sponte* determination of the court. *See* FED. R. CIV. P. 11(c)(3). When a motion is made on notice, "[t]he standard for triggering the award of fees under Rule 11 is objective unreasonableness," *Margo v. Weiss,* 213 F.3d 55, 65 (2d Cir. 2000), as opposed to "bad faith." *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003). In the Second

9

Circuit, an action is "objectively unreasonable," and therefore "Rule 11 sanctions are appropriate where an attorney or party declines to withdraw a claim 'upon an express request by his or her adversary after learning that [the claim] was groundless.'" *Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 220 (E.D.N.Y. 2011) (quoting *Carlton Grp., Ltd. v. Tobin*, No. 02 CIV. 5065, 2003 WL 21782650, at *6 (S.D.N.Y. July 31, 2003); *Calloway v. Marvel Entm't Grp., a Div. of Cadence Indus. Corp.*, 854 F.2d 1452, 1472 (2d Cir. 1988), *rev'd in part sub nom. Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989) ("An attorney cannot be sanctioned [ ] for failing to withdraw a claim that later proves to be groundless, provided that the attorney[ ] . . . did not decline to withdraw it upon an express request by his or her adversary after learning that it was groundless."); *see O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 709 (2d Cir.1990) ("[C]ontinuing to press an obviously meritless lawsuit does tend to indicate bad faith and further supports the imposition of a rule 11 sanction."). However, the notice of a groundless claim and a request for its withdrawal must come at least 21 days prior to a moving party's filing of a Rule 11 motion with the court. This is due to Rule 11's "safe harbor" provision, which necessitates a 21 day period following service of a Rule 11 motion on an opposing party, and filing with the Court. *See* FED. R. CIV. P. 11(c)(2).

In order to *sua sponte* issue Rule 11 sanctions, a court is obligated to issue an order to show cause to the offending party. *See* FED. R. CIV. P 11(c)(3). Under this approach, the proper standard is "subjective bad faith." The higher standard on *sua sponte* determinations is necessitated by the lack of a "safe harbor" period during which a party may reconsider an assertion. *See In re Pennie & Edmonds LLP*, 323 F.3d at 91 ("The risk [ ] that lawyers will sometimes withhold submissions that they honestly believe have plausible evidentiary support . . . is appropriately minimized, as the Advisory Committee contemplated, by applying a 'bad

10

faith' standard to submissions sanctioned without a 'safe harbor' opportunity to reconsider."). And where a court imposes Rule 11 sanctions *sua sponte*, "such a sanction [cannot] include 'an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation,' because attorney's fees can only be included in a sanction that is 'imposed on motion.'" *Castro v. Mitchell*, 727 F. Supp. 2d 302, 309 (S.D.N.Y. 2010) (quoting FED. R. CIV. P. 11(c)(4)).

### b.  Application to the Facts

In support of her motion for fees, Defendants' counsel submits an affirmation in which she states that on April 4, 2017, she telephoned Samuel F. Denny, Esq., counsel for Plaintiff, explained that there was no basis in law for the NYCHRL claims asserted in the Complaint, and requested that he voluntarily withdraw the NYCHRL claims, to which Plaintiff's counsel responded "make your motion [to dismiss]." Affirmation of Meredith Cavallaro in Support of Defendants' Motion ("Cavallaro Aff.") [DE 24] ¶ 3.  Plaintiff 's counsel has not submitted any rebutting this assertion.  Defendants filed their motion to dismiss on April 21, 2017.  *See* DE 13. At the Initial Conference before the Court, Plaintiff's counsel, Samuel F. Denny, Esq. acknowledged that Defendants' counsel had telephoned him in regard to the NYCHRL claim (although he disputed the nature of the discussion as stated by Defendants' counsel).  Co-counsel for Plaintiff, Richard Rosenthal, Esq. conceded that inclusion of the NYCHRL claims was "a mistake."

The instant motion does not reference Rule 11 as a basis for attorneys' fees, nor the "safe harbor" provision of Rule 11.  Rule 11(c)(2) requires that a "motion for sanctions must be made separately from any other motion."  In light of this requirement, the Court does not construe Defendants' motion for attorneys' fees to be a motion for sanctions under Rule 11.  Although

11

Defendants' motion encompasses conduct that arguably satisfies the spirit of Rule 11, the motion fails to satisfy the Rule's significant procedural requirements, and courts in this Circuit have repeatedly failed to permit alternative forms of notice to substitute for Rule 11's requirement. *See Castro*, 727 F. Supp. 2d at 307; *Schenectady Indus. Corp. v. Upstate Textiles, Inc.*, 689 F.Supp.2d 282, 296 (N.D.N.Y. 2010) ("The two letters sent by defense counsel . . . warning of [their] intentions to move for sanctions under Rule 11 are not a valid substitute for service of a copy of the actual motion 21 days before it is filed with the court."); *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 309 (S.D.N.Y. 2005) ("[T]he rule states explicitly that service of the motion itself is required to begin the safe harbor clock—the rule says nothing about the use of letters.").

Nor may the Court properly able to *sua sponte* issue sanctions under Rule 11 under the instant circumstances. The Court has not ordered Plaintiff's counsel to "show cause" why his conduct violated Rule 11. *See* FED. R. CIV. P. 11(c)(3). Moreover, the Court does not find that Plaintiff's counsel exhibited "subjective bad faith" in the instant circumstances sufficient to warrant Rule 11 sanctions in the absence of motion that satisfies the "safe harbor" provision of Rule 11(c)(2), as the Court discusses further below. Even if the Court were able to *sua sponte* issue Rule 11 sanctions, such sanctions could not be monetary in nature of the kind sought by Defendants. *See Castro*, 727 F. Supp. 2d at 309.

For the foregoing reasons, the Court finds an award of attorneys' fees under Rule 11 to be inappropriate in this case.

### 2. *28 U.S.C. § 1927 and the Court's Inherent Power*

#### a. **Legal Principles**

Under 28 U.S.C. § 1927, any attorney in a federal court who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Bad faith is the touchstone of an award under this statute." *Int'l Bhd. of Teamsters*, 948 F.2d at 1345. Accordingly, the Second Circuit has held that "an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.* (citation omitted); *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986) ("Imposition of a sanction under § 1927 requires a 'clear showing of bad faith.'") (citation omitted); *Colucci v. New York Times Co.*, 533 F. Supp. 1011, 1014 (S.D.N.Y. 1982) ("To justify the imposition of excess costs of litigation upon an attorney [under § 1927] his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation. The section is directed against attorneys who willfully abuse judicial processes.").

Similarly, under the exercise of a court's inherent power to supervise and control its own proceedings, the bad-faith exception to the American Rule allows a court to award attorneys' fees where there is "both 'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes,' and 'a high degree of specificity in the factual findings of [the] lower courts.'" *Oliveri*, 803 F.2d at 1272 (quoting *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 344 (2d Cir. 1986). The standard a court uses in determining whether to impose sanctions under its inherent authority is substantively similar to the standard a court uses in determining whether to impose

13

sanctions under § 1927. *See Oliveri*, 803 F.2d at 1273 ("[W]e hold today that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent powers.") (citation omitted).

### b. Application to the Facts

As previously noted, the Court has determined that Plaintiff's counsel does not appear to have exhibited "subjective bad faith" in pleading the NYCHRL claims and then failing to withdraw them prior to Defendants' filing of the motion to dismiss. Given the circumstances of this case, while the NYCHRL claims were indeed "without merit," the Court cannot say that the pleading of the claims and subsequent failure to remove them promptly were "so completely without merit as to require the conclusion" that Plaintiff's counsel intended to improperly delay the proceeding." *Int'l Bhd. of Teamsters*, 948 F.2d at 1345. Nor is the record developed enough at this point to provide "clear evidence" that the actions of Plaintiff's counsel were undertaken for reasons of harassment and delay. Rather, as indicated by the discussion the Court had with Attorney Denny at the June 2, 2017 Initial Conference, Mr. Denny's decision to plead the NYCHRL was based on a subjectively honest, however incorrect, belief that his client's residency in Queens was sufficient to support a claim under the NYCHRL. While the Court recognizes that there is little to no explanation as to why the NYCHRL claims were not expeditiously removed from the Complaint following Mr. Denny's telephone call with Defendants' counsel, the Court cannot, at this juncture, make a finding that counsel for Plaintiff's questionable conduct was motivated by a desire to delay or harass Defendants, or for other any other improper purpose.

Accordingly, the Court must conclude that an award of attorneys' fees under either 28 U.S.C. § 1927 or the court's inherent authority is not available here.

### B. Other Considerations

While the Court is unable to make an award of attorneys' fees in light of the foregoing discussion and the absence of the circumstances presented by the instant motion to trigger any of the authority the Court can properly exercise, the Court has been very concerned regarding the conduct of Attorney Denny and has expressed that concern in the record. Notwithstanding multiple directives to Attorney Denny issued in specific Orders of the Court, Mr. Denny failed to comply with those Orders. *See* DE 17 (provide HIPAA authorizations); June 22, 2017 Electronic Order (respond to DE 19 by the close of business on June 23, 2017); DE 20 (failure to respond to 6/22/17 Order and issuing Show Cause Order to respond in writing by July 5, 2017 why sanctions should not be imposed); DE 25 (July 25, 2017 Order setting matter down for show cause hearing on August 3, 2017 for failure to comply with DE 17, June 22, 2017 Electronic Order, and DE 20); DE 27 (directing Plaintiff's counsel to reimburse Defendants' transportation costs; repeated directive to provide HIPAA authorizations by 8/11/17; serve overdue discovery demands by 8/14/17; serve overdue discovery responses to Defendants by September 28, 2017). To the Court's knowledge, none of these items has been redressed by Attorney Denny.

A federal district court may impose sanctions under Fed. R. Civ. P. 37(b) when a party violates a court order. *Greene v. Netsmart Technologies, Inc.*, No. CV 08-4971, 2011 WL 2225004, at *7 (E.D.N.Y. Feb. 28, 2011) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002). Where the alleged misconduct is the non-production of relevant documents, district

15

courts have broad discretion in fashioning an appropriate sanction. *See Creative Resources Group of New Jersey v. Creative Resources Group, Inc.*, 212 F.R.D. 94, 102 (E.D.N.Y. 2002).

In light of Attorney Denny's persistent non-compliance with the Court's Orders -- non-compliance which has necessitated further applications to the Court by Defendants' counsel seeking relief – the finds that a sanction is warranted.  **The Court therefore imposes a sanction of $500 on Attorney Denny himself – not his client -- to be paid over to Defendants' counsel within thirty (30) days of entry of this Order.  Any failure to comply with this Order will result in further action by the Court**.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for attorneys' fees in connection with the motion to dismiss the NYCHRL is DENIED.  However, the Court imposes a sanction of $500 upon Attorney Denny for his repeated failure to comply with the Court's Orders.  **The Court is directing Attorney Denny to serve a copy of this Memorandum and Order upon his client forthwith and to file proof of such service on ECF no later than April 13, 2018.**  The Court is also sending a copy of this Memorandum and Order to Plaintiff Everton Moncrieffe.

**SO ORDERED.**

Dated: Central Islip, New York
       March 30, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge

16